UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE: ATIF, INC.                                      Bankr. No. 2:17-bk-1712-FMD

     Debtor.

_____/

DANIEL J. STERMER, as Creditor Trustee,

     Appellant,

                                      Adv. Pro. No. 2:18-ap-531-FMD

v.                                                          Case No. 2:21-cv-950-JLB

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY, OLD REPUBLIC
NATIONAL TITLE HOLDING COMPANY,
OLD REPUBLIC TITLE COMPANIES, INC.,
and ATTORNEYS' TITLE FUND SERVICES,
LLC,

     Appellees.

_____/

## OPINION & ORDER

This appeal arises from an adversary proceeding concerning alleged pre-petition fraudulent transfers in connection with the bankruptcy case of ATIF, Inc. In the adversary proceeding, Plaintiff-Appellant Daniel Stermer, as Creditor Trustee ("Appellant"), asserted claims against Old Republic National Title Insurance Company ("OR Title"), Old Republic National Title Holding Company ("OR Holding"), Old Republic Title Companies, Inc. ("OR Companies"), and Attorneys' Title Fund Services, LLC ("ATFS" and together with OR Title, OR Holding, and OR Companies, "Appellees") seeking to recover fraudulent transfers and seeking judgment against certain of Appellees on alter ego and successor

1

liability claims.  After a bench trial as to reasonably equivalent value, the
bankruptcy court issued a decision and subsequently issued another decision on
cross-motions for summary judgment.  Appellant appeals from several orders
stemming from issues that occurred during the trial, the bankruptcy court's order
on summary judgment, and the bankruptcy court's order denying Appellant's
Federal Rule of Civil Procedure 15(b) request for leave to amend his complaint.  For
the reasons described below, the Court affirms the orders of the bankruptcy court.

## BACKGROUND[1]

Appellant is the Creditor Trustee in *In re ATIF, Inc.*, No. 2:17-bk-1712-FMD
(Bankr. M.D. Fla.).  On October 16, 2018, Appellant initiated an adversary
proceeding against Appellees.  Stemming from a 2015 transaction between
Appellees and Debtor, the operative complaint in the adversary proceeding alleged:

- Six counts of constructive fraud against OR Title under 11 U.S.C. § 548 and
  Fla. Stat. § 726.105 (Counts II–IV, VI–VIII);

- Two counts of actual fraud against OR Title under 11 U.S.C. § 548 and Fla.
  Stat. § 726.105 (Counts I and V);

- One count seeking declaratory relief against ATFS, OR Companies, and OR
  Holding declaring that ATFS is the alter ego of OR Companies and OR
  Holding (Count IX); and

- Two counts of successor liability against OR Companies and OR Holding
  under the theories of *de facto* merger and mere continuation (Counts X and
  XI).

Third Amended Complaint (App. Vol. 12, A–2648–90).[2]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in
the Appellant's Brief.

[2] Citations to Appellant's appendix cite the Appellant's Appendix (App.), the volume

<u>The Sanctions Motion</u>

On August 18, 2020, Appellant filed an Emergency Motion for Sanctions and Default Judgment and Request for Expedited Consideration (the "Sanctions Motion"). (App. Vol. 19, A–4343–71). On August 24, 2020, the bankruptcy court entered an order (the "Sanctions Order") denying the Sanctions Motion and directing the parties to meet and confer prior to a continued hearing on what the bankruptcy court would construe as a motion to compel. (*See* App. Vol. 25, A–5815).[3]

<u>The REV Trial</u>

In February 2021, the bankruptcy court held a trial on reasonably equivalent value. At trial, the bankruptcy court bifurcated the REV Trial into two phases: The "rights" phase and the "value" phase. Appellant Brief, at 31. The "rights" phase focused on what rights Debtor had to the Title Plant[4] as of the date of the Master Agreement, and the "value" phase focused on the value of Debtor's rights in the Title Plant and the intangible assets transferred to OR Title as part of the Master Agreement. Appellant Brief, at 21, 31; Appellee Brief, at 11.

<u>REV Order</u>

On March 29, 2021, the bankruptcy court issued its Findings of Fact, Conclusions of Law, and Memorandum Opinion Regarding Reasonably Equivalent

---

number (Vol. X), and the page number (A–X) as indicated in the pagination in the footer of the Appendix.

[3] Appellant did not attach the Sanctions Order to his appendix.

[4] Appellee defines a title plant as "the compilation of records that are used to search and detect defects to title." Appellee Brief, at 5.

Value (the "REV Order"). (App. Vol. 36, A–8279–309). On April 15, 2021, Appellant filed a notice of appeal of the REV Order. *Stermer v. Old Republic National Title Ins. Co., et al.*, No. 2:21-cv-00311-JLB, (Doc. 1) (M.D. Fla. Apr. 15, 2021). Appellees moved to dismiss for lack of appellate jurisdiction, arguing that the REV Order did not constitute a final, appealable order. *Id.* (Doc. 6). On November 22, 2021, this Court dismissed the appeal without prejudice for lack of appellate jurisdiction. *In re ATIF, Inc.*, No. 2:21-cv-311-JLB, 2021 WL 5448971, at *4 (M.D. Fla. Nov. 22, 2021).

<u>Expert Testimony Motions</u>

a. Pfeiffer Order

Appellees moved to exclude the testimony and opinions of Appellant's expert, Allen Pfeiffer (the "Pfeiffer Motion") and on February 12, 2021, the bankruptcy court entered an order (the "Pfeiffer Order") granting in part and denying in part the Pfeiffer Motion. (App. Vol. 31, A–7043–45).

The Pfeiffer Order prevented Mr. Pfeiffer from testifying at trial with respect to the Option to Re-Emerge and struck his expert report with respect to his valuation of the Option to Re-Emerge. (*Id.* at A–7044). But it did not preclude Mr. Pfeiffer from testifying about the value of the Title Plant or the value of Debtor's intangible assets. (*Id.*).

b. Cavanaugh Order

Appellant moved to exclude the expert report of Lauren Cavanaugh (the "Cavanaugh Motion"), and on February 12, 2021, the bankruptcy court entered an

4

order (the "Cavanaugh Order") denying the Cavanaugh Motion.  (App. Vol. 31, A–7047–48).

Although Appellant listed the Cavanaugh Order as one that Appellant was appealing, Appellant made no argument about the Cavanaugh Order and only mentioned Ms. Cavanaugh's testimony in passing, as an example of alleged disparate treatment during the REV Trial.

c.   Hazel Order

Appellant moved to limit the expert opinion of Steven J. Hazel (the "Hazel Motion"), and on February 16, 2021, the bankruptcy court entered an order (the "Hazel Order") denying the Hazel Motion.  (App. Vol. 31, A–7122–23).

Although Appellant listed the Hazel Order as an order that Appellant was appealing from, Appellant has made no specific argument about the Hazel Order and only mentioned Mr. Hazel's testimony in the context of alleged disparate treatment during the REV Trial.

<u>The Rule 15(b) Motion</u>

On February 18, 2021, Appellant filed a motion (the "Rule 15(b) Motion"), seeking leave of the bankruptcy court to amend the complaint to allege a mediate fraudulent transfer of intellectual property from Debtor to the Trust in 2011.  (App. Vol. 31, A–7151–61); Appellant Brief, at 74.  Appellant argued that the trial evidence showed that (i) certain intellectual property at issue in the case was transferred from Debtor to its parent company, the Trust, in 2011 before transferring it to OR Title under the Master Agreement; and (ii) the transfer from

Debtor to the Trust (the "Initial Transfer") was itself fraudulent.  (App. Vol. 31, A–7151–52).  Appellant noted that he did not believe it was necessary to plead this initial transfer in the complaint and that he was filing the Rule 15(b) Motion out of an abundance of caution.  (*Id.*, at A–7152).  On December 2, 2021, the bankruptcy court entered an order (the "Rule 15(b) Order") denying the Rule 15(b) Motion.  (App. Vol. 36, A–8394–404).

Summary Judgment Motions

Appellant moved for summary judgment on February 10, 2020 (the "Appellant Summary Judgment Motion"), arguing that there was no genuine issue of material fact that (i) OR Title was liable for an actual fraudulent transfer (Counts I and V) and (ii) ATFS had successor liability for Debtor's debts under a mere continuation theory of liability.  (App. Vol. 11, A–2568–602).

On July 31, 2020, Appellees moved for summary judgment on all counts (the "Appellee Summary Judgment Motion").  (App. Vols. 12–13, A–2801–58).

On December 2, 2021, the bankruptcy court entered an order (the "Summary Judgment Order") denying the Appellant Summary Judgment Motion and granting the Appellee Summary Judgment Motion.  (App. Vol. 36, A–8235–392).

Final Judgment

On December 3, 2021, the bankruptcy court entered final judgment against Appellant on all counts.  (App. Vol. 36, A–8406–07).

On December 23, 2021, Appellant filed the Notice of Appeal, indicating his appeal from:

6

(1) the Final Judgment;

(2) the Sanctions Order;

(3) the Pfeiffer Order;

(4) the Cavanaugh Order;

(5) the Hazel Order;

(6) the REV Order;

(7) the Summary Judgment Order; and

(8) the Rule 15(b) Order.

(App. Vol. 36, A–8409–13).

## STANDARDS OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts. *See* 28 U.S.C. § 158(a)(1). The district court functions as an appellate court in reviewing decisions of the bankruptcy court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). A district court reviews evidentiary rulings only for an abuse of discretion. *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1265 (11th Cir. 2015). This Court reviews legal conclusions of the bankruptcy court *de novo* and reviews the bankruptcy court's findings of fact for clear error. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *Fed. Trade Comm'n v. Marcus*, 848 F. App'x 388, 391 (11th Cir. 2021). Mixed questions of law and fact are reviewed *de novo*. *In re Cox*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007).

When reviewing a bankruptcy court's decision, "the district court . . . is [not]

authorized to make independent factual findings." *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990). The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Morrisette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (citations and quotation marks omitted). The burden of showing clear error falls on the party seeking to overturn a bankruptcy court's finding. *See In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002). "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case to the bankruptcy court for the necessary factual determination." *JLJ Inc.*, 988 F.2d at 1116.

Appellant raises nine issues on appeal. For purposes of clarity, the Court considers these issues in four sections: (I) evidentiary issues; (II) REV trial issues; (III) summary judgment issues; and (IV) Rule 15(b) Motion issues.

## DISCUSSION

## I.   EVIDENTIARY ISSUES

### a. Allan Pfeiffer's Testimony (Appellant Issue 1).

#### i. Evidentiary standard

Federal Rule of Evidence 702 controls the admission of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004). Rulings on the admissibility of expert testimony "'inherently require[ ] the trial court to conduct an exacting analysis' of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Frazier*, 387 F.3d at 1259 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)). Decisions regarding the admission of expert testimony are reviewed for abuse of discretion. *See Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1337 (11th Cir. 2009). A court abuses its discretion "if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 77 (11th Cir. 2013) (citations omitted). This standard of review is "extremely limited and highly deferential." *L. Sol. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304 (11th Cir. 2020). A court abuses its discretion when its "conduct strays from neutrality, and even then only when [its] remarks demonstrate pervasive bias and unfairness that actually prejudice a party." *United States v. Pineda Castro*, 795 F. App'x 635, 655 (11th Cir. 2019) (quoting *United States v. Hill*, 643 F.3d 807, 846 (11th Cir. 2011)). Even if

the bankruptcy court did commit an abuse of discretion, this Court "will overturn its evidentiary ruling only if the [appellant has] shown that the ruling had a 'substantial prejudicial effect.'" *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1265 (quoting *Adams v. Austal*, *U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014)).

ii. <u>Court's ruling on Mr. Pfeiffer's testimony</u>

Here, the bankruptcy court ruled that Mr. Pfeiffer "did not testify or otherwise provide the Court with any information regarding reliable principles, methods, and evaluation standards used in appraising intangible assets or title plants." (App. Vol. 36, A–8303).  The bankruptcy court noted that "Mr. Pfeiffer admitted that he does not hold any certifications or designations as an appraiser or a valuation expert and that, although he once valued a title company with a title plant component, he has never separately valued a title plant," that his written expert report "did not identify any textbooks or valuation organizations that use the multiple 'premium over tangible equity' that he used in his valuation of Debtor's intangible assets," and that he testified: "I don't rely on textbooks, I rely on doing valuations the way I always do it." (App. Vol. 36, A–8302–03).  The bankruptcy court found Mr. Pfeiffer's opinions "largely *ipse dixit*: the intangible assets have the values stated because he said so." (App. Vol. 36, A–8306).  Furthermore, the bankruptcy court held in the alternative that "even if it were to accept Mr. Pfeiffer's valuation of the Title Plant, Plaintiff failed to present evidence of the value of Debtor's *rights or interest* in the Title Plant as of 2015." (*Id.*).  Specifically, the bankruptcy court found that Plaintiff failed to present a shred of evidence as to the

10

value of Debtor's contingent interest in the Title Plant as of December 2015, including how to go about valuing the Title Plant to account for "the contingent nature of Debtor's interest, or whether the value of Debtor's interest in the Title Plant would be affected by OR Title's right to a copy of the Title Plant."  (*Id.*).

Appellant opines that the bankruptcy court: (i) had no authority to exclude the evidence unless a party objected; (ii) placed too much emphasis on reference to textbooks and treatises; (iii) improperly struck Mr. Pfeiffer's testimony regarding certain treatises that allegedly supported his approach; (iv) misapplied the *ipse dixit* concept; and (v) improperly prevented Appellant from examining Mr. Pfeiffer on the "Option to Reemerge."  Appellant Brief, at 10–18.  These arguments are unpersuasive.

1. *Whether the bankruptcy court had authority to* sua sponte *exclude Mr. Pfeiffer's testimony after trial.*

Appellant argues that the bankruptcy court had no authority to *sua sponte* exclude Mr. Pfeiffer's testimony after the REV Trial.  Appellant Brief, at 52. Appellant cites *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018) for the proposition that absent an objection, a court should only *sua sponte* exclude evidence where it is "so obviously inadmissible and prejudicial."  *Id.*  In *ML Healthcare*, the Eleventh Circuit found that because a plaintiff failed to object to certain statements, the court reviewed the admission of such statements for plain error, and that for the admission of evidence to constitute plain error, "the evidence must have been so obviously inadmissible and prejudicial that, despite [the opposing party's] failure to object, the district court, *sua sponte*,

should have excluded the evidence."  881 F.3d at 1305.  In other words, where evidence is obviously inadmissible, a trial court commits clear error by <u>failing</u> to exclude it.  In contrast to that case law, here, the bankruptcy court did exclude the evidence.  Accordingly, that case does not support Appellant's argument that the bankruptcy court did not have authority to *sua sponte* exclude testimony.

Appellant's argument that the bankruptcy court did not have authority to exclude the testimony because Federal Rule of Evidence 103 requires that a party object to admitting evidence borders on frivolous.  Federal Rule of Evidence 103(a) explains that a party must preserve its claim of error by objecting or moving to strike; it does not state that a court may not exclude evidence where there is no objection when it is charged, as here, to make both findings of fact and conclusions of law.  Fed. R. Evid. 103(a).

Appellant also argues that "any authority the bankruptcy court may have had to address Rule 702 expired after the REV Trial ended . . . ."  Appellant Brief, at 53.  This argument is misplaced.  Each of the authorities cited by Appellant for this proposition was in the context of a jury trial.  *See FMS, Inc. v. Volvo Const. Equip. N. Am., Inc.*, No. 00 C 8143, 2007 WL 844899, at *9 (N.D. Ill. Mar. 20, 2007) ("[B]y waiting to raise the issue until the end of trial, we noted that to try to properly instruct the jury on this issue would be impossible, since the testimony had been given, and cross-examined, and Volvo had been able to present their own expert to contradict Lieber's analysis."); *Macsenti v. Becker*, 237 F.3d 1223 (10th Cir. 2001); *United Food Grp., LLC v. Cargill, Inc.*, No. CV 11-7752 SS, 2015 WL

12

13868984 (C.D. Cal. June 8, 2015).  Courts in this circuit have found that there is

no need to rule to exclude testimony in advance of a bench trial.  *See N.W.B.*

*Imports & Exports Inc. v. Eiras*, No. 3:03-cv-1071-J-32-MMH, 2005 WL 5960920, at

*1 (M.D. Fla. Mar. 22, 2005) ("Because this is a non-jury trial, the gatekeeping

purpose of *Daubert* is not implicated.  The Court will therefore receive [the expert's]

testimony, make a final admissibility decision and, if admissible, accord it the

weight, if any, it deserves."); *Porras v. United States*, No. 8:21-cv-423-JSS, 2022 WL

2073006, at *2 (M.D. Fla. June 9, 2022) (collecting cases) ("[I]n actions set for a non-

jury trial, such as this matter, there is considerable legal support for the proposition

that the *Daubert* gatekeeping function is relaxed. . . .  Here, the court finds that

Plaintiff's concerns with Defendant's experts are more appropriately addressed at

trial when all the facts can be considered in detail." (citations and quotations

omitted)).  Thus, because the REV Trial was a non-jury trial, the bankruptcy court

did not reversibly err by excluding Mr. Pfeiffer's purported expert testimony after

the trial.  Or, alternatively, it gave his testimony little or no weight.

Again, that the bankruptcy court first admitted the evidence and later

excluded or gave it little or no weight does not change the analysis.  *See In re Salem*,

465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are

the same, the court does not err in admitting the evidence subject to the ability later

to exclude it or disregard it if it turns out not to meet the standard of reliability

established by Rule 702."); *Ass Armor, LLC v. Under Armour, Inc.*, No. 15-cv-20853-

Civ-COOKE/TORRES, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) (denying

*Daubert* motions to exclude expert testimony, but "reserv[ing] the right to disregard [the expert's] testimony in whole or in part if, at trial, it turns out not to meet the standard of reliability established by Rule 702" (quotation marks omitted) (citation omitted)).

>   2.  *Whether the bankruptcy court placed too much emphasis on the lack of reference to textbooks and treatises in Mr. Pfeiffer's expert report.*

Appellant opines that the bankruptcy court overemphasized Mr. Pfeiffer's lack of reference to textbooks and treatises, arguing that Rule 702 does not require that an expert quote texts and treatises. Appellant Brief, at 56. But the case that Appellant relies on for this proposition, *Triant v. American Medical Systems Inc.*, No. CV-12-00450-PHX-DGC, 2020 WL 4049844, at *13 (D. Ariz. July 20, 2020), is distinguishable. In that case, while the expert report did not contain a list of articles or other publications the expert relied on in reaching her opinions, the Court still concluded that she was qualified by training and experience to render her opinions. *Triant*, 2020 WL 4049844, at *13.

Conversely, in the present case, in addition to explaining that Mr. Pfeiffer did not use any textbooks or treatises, the bankruptcy court found that "Mr. Pfeiffer admitted that he does not hold any certifications or designations as an appraiser or a valuation expert and that, although he once valued a title company with a title plant component, he has never separately valued a title plant." (App. Vol. 36, A–8302–03). The bankruptcy court ultimately found that "Mr. Pfeiffer did not testify or otherwise provide the Court with any information regarding reliable principles,

methods, and evaluation standards used in appraising intangible assets or title plants." (App. Vol. 36, A–8303).

The Court cannot say that the bankruptcy court abused its discretion as to its evidentiary determination to not credit Mr. Pfeiffer's testimony on this issue as that of an expert. And as to its findings of facts derived from Mr. Pfeiffer's testimony on this issue, the Court is not left with the "definite and firm conviction that a mistake has been committed," and thus cannot find that such was clear error. *See Morrisette-Brown*, 506 F.3d at 1319 (citations and quotation marks omitted).

>   3.  *Whether the bankruptcy court improperly struck Mr. Pfeiffer's testimony regarding certain treatises that allegedly supported his approach.*

Appellant opines that the bankruptcy court "struck" Mr. Pfeiffer's testimony about certain treatises because the references were not listed in his report, even though they were discussed in his deposition. Appellant Brief, at 57. Appellant cites two instances in which he believes that references to treatises and textbooks were improperly struck. *Id.* In the first instance, the bankruptcy court struck Mr. Pfeiffer's testimony because it was not responsive to the question asked, which was well within the bankruptcy court's discretion:

>   Q     Now, in your report, you did not identify any textbook that used a multiple called "premium over tangible equity," did you?
>
>   A     I did not speak to one textbook. In my view, as I told you in my deposition, every single textbook, every single treatise would say that you take the –
>
>   MR. GOLDSMITH:     Your Honor, I would move to strike –

15

> THE COURT:        All right.
>
> MR. GOLDSMITH:        My question was, did he cite to any textbook and now he's trying to go beyond that.
>
> THE COURT:        Right. Mr. Pfeiffer, just a yes-or-no answer, please.

(App. Vol. 34, A–7792–93). The Court does not find that the bankruptcy court's instruction to answer the question as it was asked was reversible error. In the second instance, the bankruptcy court reserved its decision:

> Q        Okay. I want to next turn your attention to the testimony regarding the premium over tangible equity multiple that was used in this case.
>
>          And Mr. Goldsmith asked you about various treatises or authorities that aren't cited in your report; do you recall that testimony?
>
> A        I do.
>
> Q        Okay. Would you explain what you were trying to convey to Mr. Goldsmith and the Court regarding authority and textbooks when you were being asked those questions?
>
> A        Sure. Every textbook that I'm aware of, from Dr. Damodaran to Mr. Pratt - -
>
> . . .
>
> MR. GOLDSMITH:        Your Honor, I have an objection I would like to assert.
>
> THE COURT:        Go ahead.
>
> MR. GOLDSMITH:        And, that is, the case law is absolutely clear that if a witness did not disclose the basis for their opinion with an authoritative text, a treatise, whatever, that they cannot now do it in their testimony in court.

16

. . .

> THE COURT:      All right. Well, why don't we do this.  I
> want you to have a chance to respond, Mr. Polenberg.  Why
> don't you move to another area of your re-direct exam and
> then you can respond and I can take a few moments and
> take a look at the cases and then we can come back on this
> issue, if we need to, with Mr. Pfeiffer.

(App. Vol. 34, A–7833).  But the bankruptcy court did not come back to the issue

because Appellant's counsel withdrew the question:

> MR. POLENBERG:      Your Honor, in the interest of
> time, I'm not going to go back to the Pratt issue; I'll
> withdraw the question.  I'll conclude redirect.

(App. Vol. 34, A–7846).  Because Appellant's counsel withdrew the question, the

bankruptcy court never ruled on the issue.  It is disconcerting that this issue was

even raised by Appellant here.

>           4.   *Whether the bankruptcy court misapplied the* ipse dixit
>                *concept.*

Finally, Appellant argues that the bankruptcy court misapplied the *ipse dixit*

concept in finding that Mr. Pfeiffer's opinions were "largely *ipse dixit*: the intangible

assets have the values stated because he said so."  (App. Vol. 36, A–8306).  Black's

Law Dictionary defines *ipse dixit* as "[s]omething asserted but not proved . . . ."

Black's Law Dictionary (11th ed. 2019), ipse dixit.  As one court in this district has

explained,

> [A]n expert's opinion becomes inadmissible where it is
> connected to existing data only by the *ipse dixit* of the
> expert. . . .  When an expert relies primarily on experience,
> the witness must explain how that experience leads to the
> conclusion reached, why that experience is a sufficient

17

> basis for the opinion, and how that experience is reliably applied to the facts. . . . This is because an expert's qualification and experience alone are not sufficient to render his opinions reliable, and expert testimony that is nothing more than what lawyers can argue in closing does not help the trier of fact.

*Woienski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019). Here, the bankruptcy court found that while Mr. Pfeiffer appeared to have specialized knowledge that could help the court, he did not establish that his testimony was the product of reliable principles and methods.  (App. Vol. 36, A–8305).  The Court finds no reversible error in the bankruptcy court describing Mr. Pfeiffer's opinion as *ipse dixit*.

Although other triers of fact might have "weighed the evidence differently," the bankruptcy court's decision to not give weight to Mr. Pfeiffer's testimony is "plausible in light of the record viewed in its entirety."  *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 565 (1985).

> 5.  *Whether the bankruptcy court reversibly erred by not allowing redirect of Mr. Pfeiffer on the Option to Reemerge.*

Appellant argues that OR Title "threw open the door to evidence about the Option to Reemerge" on cross-examination, and that the cross-examination opened the door for Appellant to elicit testimony on the Option to Reemerge.  Appellant Brief, at 59.  The bankruptcy court warned OR Title that it may be opening the door to re-direct on the Option to Reemerge.

> THE COURT:      All right.  I will allow that question to the extent that you explore this issue more thoroughly, Mr. Goldsmith.  You may be opening the door, as Mr. Polenberg

suggests.

. . .

THE COURT:        Okay, Mr. Goldsmith, the more
questions you ask about the option to re-emerge, the more
likely I am to allow Mr. Polenberg –

MR. GOLDSMITH:        But Your Honor, my –

THE COURT:        -- to redirect on that issue.

(App. Vol. 34, A–7779; A7786–87).  But Appellant points to no instance when

Appellant's counsel attempted to redirect on the issue of the Option to Reemerge

and was not given the opportunity to do so.  Accordingly, this Court has no action by

the bankruptcy court to review and finds no basis to reverse the bankruptcy court

on this issue.

In sum, the Court affirms with respect to the Pfeiffer Order because it finds

that the bankruptcy court neither abused its discretion for the evidentiary issues

raised nor clearly erred in any of its findings of fact.  The bankruptcy court instead

gave Mr. Pfeiffer's testimony the weight it deserved based on his testimony.

> ### b. Whether the bankruptcy court abused its discretion by permitting Ms. Bolger to testify outside of the parties' stipulated topics (Appellant Issue 3).

Appellant argues that the bankruptcy court abused its discretion by

permitting Deanna Bolger to testify outside of topics that the parties had stipulated

to.  Appellant Brief, at 64–69.

Federal Rule of Civil Procedure 26 states, in relevant part, that parties must

provide to other parties "the name . . . of each individual likely to have discoverable

19

information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i).  Federal Rule of Civil Procedure 37 states, in relevant part, that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

Appellate courts review a trial court's Rule 37(c)(1) determinations for an abuse of discretion. *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1332, 1341 (11th Cir. 2020).  In determining whether a failure to disclose was justified or harmless, courts consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 341 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)).  The Court employs a five-factor test to determine whether the failure was substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Bendik v. USAA Cas. Ins. Co.*, No. 6:19-cv-118-Orl-41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019) (citing *Pugliese v. Tex. Roadhouse, Inc.*, No. 5:17-cv-392-

Oc-PRL, 2018 WL 3757762, at *2 (M.D. Fla. Aug. 8, 2018)).  "In general, excluding expert testimony is viewed as a 'drastic' sanction requiring careful consideration." *Id.* (citing *United States v. McCarthy Improvement Co.*, No. 3:14-cv-919-J-PDF, 2017 WL 443486, at *6 (M.D. Fla. Feb. 1, 2017)).

Appellant initially argued that "the bankruptcy court abused its discretion when it permitted [Ms.] Bolger to testify at trial."  Appellant Brief, at 65–66.  But in his reply, Appellant clarified his claim, stating that "Appellant is not arguing . . . that it was improper for the Court to permit Bolger to testify under any circumstances.  Appellant's argument is that it was improper for the Court to permit Bolger to testify outside the limited scope to which the parties stipulated." Appellant Reply Brief, at 20.

According to Appellant, the parties stipulated that Ms. Bolger would only testify about ATFS's financial reports, balance sheets, and income statements, and that Appellant would be permitted to take Ms. Bolger's limited deposition on these topics even though discovery had closed.  Appellant Brief, at 66.  But, at trial, Ms. Bolger testified about the "challenges" and "costs" associated with maintaining the Title Plant, which Appellant contends was not one of the topics that the parties agreed that she would testify to.  (App. Vol. 35, A–8100–04); Appellant Brief, at 66–67.

Appellees argue that Ms. Bolger's phase 1 testimony—whether the 2009 title plant could be re-created in 2015—was not barred because it "became necessary as a result of trial developments that Appellees could not have anticipated—

Appellant's changed position regarding Debtor's title plant rights."  Appellee Brief, at 38–40.  According to Appellees, Appellant argued for the first time at trial that "notwithstanding the fact that Debtor did not retain a copy of the title plant, it still had the *right* to the 2009 title plant."  *Id.* (emphasis in original).  Additionally, Appellees argue that Ms. Bolger's phase 1 testimony was harmless under Rule 37 because the bankruptcy court found that Debtor had rights in the Title Plant notwithstanding Ms. Bolger's testimony.  Appellee Brief, at 40; (App. Vol. 32, A–7482) ("Based on the evidence presented in Court, I conclude that the Debtor had rights or an interest in the Title Plant . . . .").

With respect to Ms. Bolger's phase 2 testimony—regarding the costs and challenges of maintaining the Title Plant—Appellees argue that it was properly allowed because it was disclosed in ATFS's financial reports, the topic for which Ms. Bolger was disclosed.  Appellee Brief, at 38, 41.  Appellees also argue that the admission of the phase 2 testimony did not impact the REV Opinion ruling that Appellant presented no evidence on the value of Debtor's assets as of December 2015.  Appellee Brief, at 41.

In his reply, Appellant avers that he did not change his position because he contended both before and after trial, that the assets fraudulently transferred included Appellant's rights to the Title Plant.  Appellant Reply Brief, at 22.  And, Appellant argues, even if he had changed positions, Ms. Bolger's testimony "remained untethered to that dispute" because Ms. Bolger's testimony centered on the Title Plant's database, searching capabilities, and ability to recreate the

database as of a date certain, not whether Debtor retained a copy of the Title Plant. Appellant Reply Brief, at 22–23. With respect to the phase 2 testimony, Appellant asserts that Ms. Bolger's testimony was not about ATFS's financial reports, but instead about the challenges associated with maintaining the Title Plant and why it was important for ATFS to have and maintain the Title Plant. Appellant Reply Brief, at 23. Finally, Appellant maintains that Ms. Bolger's testimony was neither harmless nor substantially justified because Appellant had no opportunity to depose Ms. Bolger on the challenges and costs of maintaining the Title Plant, and thus could not present contrary evidence. Appellant Reply Brief, at 23–24.

In considering whether to allow Ms. Bolger to testify, the Court found, as follows:

> Well, here's what the issue is: The issue is I already granted the Plaintiff some leeway because the answers to the Requests for Admissions say that the Debtor did not retain a copy of the 2009 Title Plant.
>
> . . .
>
> And now you're taking the position that the Debtor had an ownership interest in the 2009 Title Plant. So the question is: Does the 2009 Title Plant exist?
>
> It seems to me, Ms. Bolger is really being called as a rebuttal witness, in essence, to the – not directly to testimony but directly to my giving the Plaintiff some leeway and letting the Plaintiff retreat from what appeared, from the OR Defendants' perspective, to be a very clear and plain response to the Request for Admission.
>
> So, as I understand it, Mr. Schultz is asking if you'll stipulate to the fact to which Ms. Bolger would testify, which is that it was not possible in 2015 to re-create a copy of the 2009 Title Plant. . . .

23

> And let's just back up just a minute and talk about what the testimony – the previous testimony was on this issue. As I understood it, there hasn't been any testimony regarding the 2009 Title Plant or that the Debtor retained a copy of the 2009 Title Plant. . . .
>
> The testimony was that, starting in 2011, . . . every six months that the updated copy was provided and that was the A Tape and the B Tape, so there was always an A Tape and B Tape.
>
> So there has been no testimony at this point that the 2009 Title Plant was retained by the Debtor. So if that's the case, maybe we don't need to get into whether it was possible or not possible. In other words, the Plaintiff hasn't provided any evidence that the Debtor was in possession of the 2009 Title Plant.
>
> So, are you going to take the position, Mr. Polenberg, that the Debtor had a right in the 2009 Title Plant that, based on the evidence that's been presented by the Plaintiff, isn't even around? Because if you're going to take the position that the Debtor had a right to that 2009 Title Plant, which is kind of where our starting point was this morning, then I'm going to allow Ms. Bolger to testify.

(App. Vol. 32, A–7376).

On this record, the Court cannot find that the bankruptcy court abused its discretion by allowing Ms. Bolger to testify as to this scope because, in the bankruptcy court's well-reasoned view, Ms. Bolger's testimony was presented in rebuttal to a line of argument by Appellant that contradicted Appellant's Request for Admission.

### c. Whether the bankruptcy court erred by placing the burden of proving the "discount for lack of marketability" onto Appellant (Appellant Issue 2).

Appellant argues that the bankruptcy court improperly placed the burden to

24

establish discount of the Title Plant on Appellant, resulting in the Title Plant being valued at $0.  Appellant Brief, at 63–64.  Specifically, Appellant maintains that OR Title's argument was not that the Title Plant had no value, but rather that the Title Plant should be discounted because any right Debtor had to obtain the Title Plant was contingent on certain scenarios that were unlikely to occur.  Appellant Brief, 62–63.  Thus, according to Appellant, OR Title had the burden of proof because it was trying to establish a discount to the Title Plant's value.  Appellant Brief, 63. This Court disagrees.

"[W]hether the court applied the correct burden of proof is a question of law subject to plenary review . . . .  And when a finding of fact is based on the application of an incorrect burden of proof, the finding cannot stand."  *Abbott v. Perez*, 138 S. Ct. 2305, 2326 (2018).

The party seeking to void a transfer has the burden of proving the lack of reasonably equivalent value.  *See Sec. & Exch. Comm'n v. Alleca*, No. 21-13486, 2022 WL 16631325, at *5 (11th Cir. Nov. 2, 2022).  Appellant's burden was not to show the value of the Title Plant, but to show the value of Debtor's interest in the Title Plant, which was contingent.  *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 595 (11th Cir. 1990) ("It is well established that a contingent liability cannot be valued at its potential face amount; rather, it is necessary to discount it by the probability that the contingency will occur and the liability become real.") (quotation marks removed) (quoting *In re Xonics Photochemical Inc.*, 841 F.2d 198, 200 (7th Cir. 1988) (Posner, J.)); *In re White*, 559 B.R. 787, 802 (Bankr. N.D. Ga.

25

2016) ("Here, the chance of the Debtor receiving title to the [property] was remote . . . . [T]he Court concludes the value of the future contingent right to ownership was minimal.  Plaintiff has provided no evidence to support its position that the more than $200,000 in debt satisfaction and elimination of future obligations that Debtor received was not reasonably equivalent to the value of the contingent interest.").

Appellant argues that the burden to establish the "discount" to the value of Debtor's right in light of the contingency rests on OR Title.  Appellant Brief, at 61–62.  But Appellant cites no persuasive case law in support of his theory that the burden shifts to OR Title to establish the value of the Title Plant in light of the contingency.  Appellant cites to four distinguishable cases to support his argument—*Cox Enterprises, Inc. v. News-Journal Corp.*, 469 F. Supp. 2d 1094 (M.D. Fla. 2006), *Jamil v. SPI Energy Co., Ltd.*, 713 F. App'x 42, 43 (2d Cir. 2017), *Kleiman v. Wright*, No. 18-cv-80176, 2021 WL 5447110, at *2 (S.D. Fla. Nov. 22, 2021), and *Aldar Tobacco Group, LLC v. American Cigarette Co.*, No. 08-62018-CIV-JORDAN/MCALILEY, 2010 WL 11549584 (S.D. Fla. Mar. 4, 2010)—all of which deal with discounts to value, rather than contingent rights.  For example, in *Cox Enterprises*, in valuing certain shares, the court considered whether the fair value of certain shares should reflect a 20% lack-of-marketability discount because shares of a closely-held corporation are less liquid, and therefore less marketable, than the shares of a publicly traded corporation.  469 F. Supp. 2d at 1108.  The court there found that the defendants still had the burden of showing the degree to which the

liquidity of the shares varied from the liquidity of publicly traded shares, and it was a burden that they failed to satisfy.  *Id.  Jamil* similarly dealt with a discount to the market value of restricted stock.  713 F. App'x 42, 43–44.  In *Kleiman*, the defendant argued that a jury could not rely on the market price of Bitcoin to calculate damages and the court found that the defendant had not sustained his burden of proof that he was entitled to a blockage discount in valuing the Bitcoin.  2021 WL 5447110, at *2.  And finally, in *Aldar Tobacco Group*, the defendants sought permission to destroy cigarettes that were the subject of a dispute between the parties, arguing that they were stale and unsalable and thus had no value on the market.  2010 WL 11549584, at *1.  The court there found that the defendants had failed to carry their burden of showing that the cigarettes had no present market value.  *Id.*

The facts in the cases cited by Appellant are inapposite to those here; the valuation analyses in these cases are not comparable to the valuation analysis that was required here.  In each of the cases cited by Appellant, the court sought to value the actual property (shares, Bitcoin, or cigarettes), which the defendant argued must be subject to a discount for various reasons (lack of marketability, blockage discount, or staleness).  Conversely, here, the relevant valuation is not of the Title Plant, but of Debtor's right to the Title Plant, which was contingent.  In his reply brief, Appellant claims that his argument "has always been that Debtor's right is to the ***entire value*** of the Title Plant . . . ."  Appellant Reply Brief, at 19.  But this statement is non-sensical in light of the parties' stipulation to the fact that "[a]fter

July 1, 2009, Debtor never maintained or updated any copy of the Title Plant."
(App. Vol. 30, A–6983 [¶ 37]).  Unlike the cases cited by Appellant, where the
discount was considered separately from the property, the contingency is not
severable from the right because the right is a contingent right.

Accordingly, the Court finds that the bankruptcy court did not reversibly err
by placing the burden of proof with respect to the value of Debtor's contingent right
to the Title Plant on Appellant.

### d. Whether the bankruptcy court abused its discretion in failing to sanction OR Holding, OR Companies, and ATFS based on Appellant's allegation that they fabricated evidence (Appellant Issue 7).

Appellant next argues that the bankruptcy court abused its discretion in
failing to sanction OR Holding, OR Companies, and ATFS for fabricating evidence;
specifically, "a spreadsheet detailing the cash flows and transactions between
Appellees over a 10-year period," which Appellant claims "goes to the heart of
Appellant's alter ego and successor liability claims."  Appellant Brief, at 94–95.

The appeal of discovery sanctions is subject to review under an abuse of
discretion standard.  *In re Steffen*, 433 B.R. 879, 883 (M.D. Fla. 2010) (citing *Harris
v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996)).  Appellant claims that OR Holding,
OR Companies, and ATFS produced certain spreadsheets in PDF format, and that
the spreadsheets were (i) made in response to requests for production in lieu of
productive responsive documents, and then (ii) revised after disagreement with
opinions in an expert report.  Appellant Brief, at 16–18.  Appellant claims that "[t]o
help hide the fabricated spreadsheet, Appellees produced it as part of a bulk

production, and produced it in .pdf format rather than native Excel to avoid

Appellant learning from the metadata what date Appellees created the document."

Appellant Brief, at 46.  Appellant avers that Appellees' conduct "amounts to bad

faith and a fraud on the court."  *Id.*

Appellees tell a different version of the story.  Appellee Brief, at 72–73.

Appellees claim that ATFS stated in written discovery responses that it would

provide a chart summarizing voluminous transfers between Appellees and Debtor,

they provided the chart, and after identifying errors caused by manual inputs, they

notified Appellant of the errors and produced a corrected chart.  *Id.*  Appellees also

argue that Appellant is estopped from appealing this issue because Appellant

"appears to have held the discovery issue in abeyance for the strategic purpose of

raising it on appeal, which is patently improper."  *Id.*

At a hearing on the Motion for Sanctions, the bankruptcy court found as

follows:

> In a perfect world, the discovery responses would . . . have
> been worded to say that [ATFS] would prepare a Payment
> Chart so that Mr. Polenberg was put on notice that a
> document was being prepared and would be produced for
> him.
>
> But the language of the discovery response is that [ATFS]
> will provide a Payment Chart.  And to the extent that the
> Plaintiff demonstrated a need for the documents
> responsive to the request in addition to the Payment Chart,
> [ATFS] is willing to work with the Plaintiff to reach an
> agreement.
>
> Based on the record before me, I don't see any reason to set
> this for trial or an evidentiary hearing.  I'm going to deny
> the Motion for Sanctions.  I will treat it as a Motion to

> Compel and I'll inquire of the parties as to how long you
> need to meet-and-confer and figure out how you want to
> deal with these issues.

(App. Vol. 25, A–5816).  The Court finds that the bankruptcy court's findings with respect to the Motion for Sanctions were well-reasoned and finds no abuse of discretion.

## II.   REV TRIAL

### a. Whether the bankruptcy court held the parties to differing standards during the REV Trial and whether that was an abuse of the bankruptcy court's discretion (Appellant Issue 4).

The Court reviews the bankruptcy court's management of the REV Trial for abuse of discretion.  *Pineda Castro*, 795 F. App'x at 655.

Appellant avers that the bankruptcy court used different standards for Appellant and OR Title during the REV Trial.  Appellant Brief, at 70.  For example, Appellant claims that the bankruptcy court forbid Appellant from introducing evidence regarding investment income, but permitted OR Title's expert witness to testify about the importance of investment income.  Appellant Brief, at 69-70. Appellant also claims that the bankruptcy court held the parties to different standards for expert rebuttals, allowing Appellees' rebuttal valuation expert to opine on the Title Plant's value, but not allowing Appellant's expert more than five minutes in rebuttal.  Appellant Brief, at 72–73.  Finally, Appellant opines that the bankruptcy court's decision to bifurcate the trial also resulted in holding the parties to different standards, prejudicing Appellant because he was "unable to provide the full context for the decisions and valuations relevant to entirely understand the

Master Agreement." Appellant Brief, at 73–74.

Even assuming that Appellant preserved all of his objections (which Appellee contests, *see* Appellee Brief, at 41–45), the Court cannot find that the above allegations amount to pervasive bias that would rise to the level of an abuse of discretion. The Court affirms with respect to the REV Order. To the extent that this issue includes the appeal of the Cavanaugh Order and the Hazel Order (which is unclear, based on Appellant's brief), the Court affirms with respect to the Cavanaugh Order and the Hazel Order as well.

## III.   THE BANKRUPTCY COURT DID NOT REVERSIBLY ERR IN ITS SUMMARY JUDGMENT RULINGS

"Sitting as an appellate court, a district court reviews *de novo* the Bankruptcy Court's rulings on cross-motions for summary judgment, 'and the facts are viewed in the light most favorable to the non-moving party on each motion.'" *In re Yormak*, 640 B.R. 491, 502 (M.D. Fla. 2022) (quoting *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a); Fed R. Bankr. P. 9014(c)).[5] A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Edmonson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1159 (11th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] mere

---

[5] Federal Rule of Civil Procedure 56 is made applicable to contested bankruptcy matters by Federal Rule of Bankruptcy Procedure 7056.

scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Luria v. ADP, Inc.*, No. 5:18-cv-592-Oc-34, 2020 WL 4041084, at *3 (M.D. Fla. July 17, 2020) (quoting *Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004)).

Appellees correctly note that this Court is to apply a "clearly erroneous" standard of review to the bankruptcy court's factual findings as to reasonably equivalent value because the bankruptcy court held a full trial on the merits on this issue. Appellee Brief, Statement of the Issues and Applicable Standards of Review, at ¶ 6. Because the bankruptcy court made certain factual findings at the REV Trial, the Court has reviewed the factual findings in the REV Order under a "clearly erroneous" standard. *See In re Jennings*, No. 6:10-cv-265-Orl-35, 2011 WL 13175006, at *4 (M.D. Fla. 2011). Having reviewed the factual findings in the REV Order, the Court cannot find that any of them are clearly erroneous because it is not left with the "definite and firm conviction that a mistake has been committed." *See Morrisette-Brown*, 506 F.3d at 1319. Otherwise, this Court will review the summary judgment decision de novo.

> **a. Whether the bankruptcy court (i) improperly denied Appellant's motion for summary judgment on Counts I and V and (ii) improperly granted Appellee's motion for summary judgment on Counts I and V (Appellant Issue 6).**

In his Omnibus Motion for Partial Summary Judgment, Appellant moved for partial summary judgment against OR Title on Counts I and V of the operative complaint. Count I was for actual fraud under 11 U.S.C. § 548 and Count V was for actual fraud against OR Title under Florida Statute § 726.105(1)(a). (App. Vol. 12,

A–2664–66 [¶¶ 86–89]; A–2671–73 [¶¶ 102–05]).

"To establish a *prima facie* case of actual fraud, a plaintiff must prove that there was a creditor to be defrauded, there was a transfer of property, and there was a debtor intending fraud." *Plus 362, S.A. v. Giraud*, No. 8:19-cv-2164-WFJ-TGW, 2022 WL 911574, at *3 (M.D. Fla. March 29, 2022) (citing *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302 (11th Cir. 2020). The last element is difficult to prove through direct evidence, so courts review "badges of fraud" to determine whether actual fraud occurred. *Id.* (citing *Chase Bank USA, N.A. v. Jacucci*, No. 19-62318-Civ-Singhal/Valle, 2021 WL 2689995, at *6 (S.D. Fla. Feb. 22, 2021)). The Court can consider whether:

(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor's assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*United States v. S. Cap. Constr., Inc.*, No. 8:16-cv-705-T-24JSS, 2018 WL 1305184,

33

at *9 (M.D. Fla. Feb. 15, 2018) (citing *Yaralli v. Am. Reprographics Co., LLC*, 165 So. 3d 785, 788–89 (Fla. 4th DCA 2015); Fla. Stat. § 726.105(2)).  These badges of fraud are not exclusive and the Court may consider other evidence to determine intent.  *Id.* (citing *Kearney Constr. Co., LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 17–11368, 2017 WL 4711836, at *3 (11th Cir. Oct. 19, 2017)).  For example, in *In re Stewart*, 280 B.R. 268 (Bankr. M.D. Fla. 2001), the court found that "actual intent may not necessarily be presumed where a debtor had legitimate or independent reasons or purposes for making the transfer."  *Id.* at 283.  "Actual intent is often proved through circumstantial evidence and typically presents a jury question."  *In re Bifani*, No. 8:13-cv-02197-JDW, 2014 WL 272920, at *5 (M.D. Fla. Jan. 23, 2014) (citing *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1312 (M.D. Fla. 2009)).  "If, however, the evidence is one-sided, the plaintiff may be entitled to summary judgment on the issue of a fraudulent transfer. . . .  In deciding whether summary judgment is appropriate, a court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Id.* (citing *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004)).

Here, the bankruptcy court concluded that Appellant failed to meet his burden of proving that Debtor made transfers with actual intent to hinder, delay, or defraud its creditors.  (App. Vol. 36, A–8366–67).  And on the same record, the bankruptcy court concluded that the OR Defendants met their burden of proving an absence of evidence to support Appellant's actual fraudulent transfer claims,

granting OR Title summary judgment on Counts I and V. (*Id.*). Appellant contends that the bankruptcy court erred because: (1) Appellant established fraudulent intent as a matter of law; and (2) the bankruptcy court could not determine "legitimate purpose" as a matter of law. Appellant Brief, at 80–94.

The Court disagrees. The bankruptcy court concluded that Appellant had established three of the eleven badges of fraud listed in Fla. Stat. § 726.105(2): "(1) that the 2015 Transfers were of substantially all of Debtor's assets; (2) that Debtor had been sued or threatened with suit before the 2015 Transfers; and (3) that Debtor was insolvent or became insolvent as a result of the 2015 Transfers." (App. Vol. 36, A–8366).[6]

Appellant argues that the bankruptcy court erred by deciding that the following three badges were not present: "(1) concealing the Master Agreement; (2) the Master Agreement was between insiders; and (3) the Master Agreement was not for reasonably equivalent value." Appellant Brief, at 83.

### i. Whether the Master Agreement was concealed.

Appellant claims that Debtor and OR Title concealed the transfer that occurred under the Master Agreement by: (i) submitting the Master Agreement to the Florida Office of Insurance Regulation ("OIR") under a trade secret designation; (ii) continuing to keep the terms of the Master Agreement hidden after it was

---

[6] Appellant *did not allege* that Debtor retained control of the property after the 2015 Transfers, that Debtor absconded, that Debtor removed or concealed property, or that Debtor transferred assets to a lienor who transferred them to an insider. (App. Vol. 36, A–8366 n.168).

executed; and (iii) the financial information provided to OIR was different than OR

Title's internal financial analysis.  Appellant Brief, at 85.

The bankruptcy court, however, pointed out that

> (a) the parties submitted the 2015 Master Agreement
> to the state agency that regulates title insurers, the
> Florida OIR, and the Florida OIR thoroughly reviewed
> it [App. Vol. 13, A–2884–85, ¶¶ 175–84]; (b) OR Title
> directly paid Debtor's policy claims – claims made on
> policies issued by Debtor – after OR Title received the
> 2015 Transfers (in other words, the claimants received
> payment from OR Title rather than from Debtor, so
> they would have been aware of OR Title's role) [App.
> Vol. 13, A–2892–93, ¶¶ 223, 232]; (c) Jimmy Jones, ATF
> Services' president, informed ATF Services' employees
> that OR Title had assumed responsibility for Debtor's
> policy claims [App. Vol. 13, A–2892–93, ¶¶ 224–25];
> and (d) the warranty deed to OR Title for the real
> property included in the 2015 Transfers was recorded
> in the public records [App. Vol. 13, A–2892, ¶ 226].

(App. Vol. 36, A–8455).

Appellant does not dispute any of the facts that the bankruptcy court relied

on, and instead disagrees with the bankruptcy court's legal conclusion.  As to this

element of actual fraud, OR Title did *not* conceal the transfer that occurred

pursuant to the Master Agreement.  A transfer that took place pursuant to an

agreement that was disclosed to a government agency, particularly when the deed

for real property included in the transfers was recorded in public records, is not a

concealed transfer.  *See In re Davis*, 138 B.R. 106, 109 (Bankr. M.D. Fla. 1992)

("[T]he assignment, having been recorded in the public records, was not

concealed."); *In re Bal Harbour Quarzo, LLC*, 623 B.R. 903, 917 (Bankr. S.D. Fla.

2020) ("There are no plausible allegations that any of the subject transfers were not

36

disclosed or were concealed.  The sale of the Property to Beach Haus was a publicly recorded and documented transaction . . . .").  Thus, the bankruptcy court did not err by finding that concealment simply did not exist.

ii.  Whether the Master Agreement was between insiders.

Appellant appears to concede that OR Title was not a statutory insider of Debtor as defined by Florida Statute § 726.102(8) and 11 U.S.C. § 101(31).  Appellant Brief, at 86.  But Appellant argues that OR Title was an insider as defined by the Eleventh Circuit.  A transfer to an insider is "one of the most important" badges of fraud.  *In re Toy King Distributors, Inc.*, 256 B.R. 1, 128 (Bankr. M.D. Fla. 2000).

In *In re Fla. Fund of Coral Gables, Ltd.*, 144 F. App'x 72 (11th Cir. 2005), the Eleventh Circuit stated that an insider "generally is an entity whose close relationship with the debtor subjects any transaction made between the debtor and such entity to heavy scrutiny."  144 F. App'x at 75 (quoting 2 Lawrence P. King, et al. *Collier on Bankruptcy* ¶ 101.31 at 101–99 (Revised 15th ed. 1996)).  The cases that have considered whether insider status exists have generally focused on two factors in making that determination: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length.  *Id.* (citing *In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992)).  "A non-statutory insider status must be determined by a factual inquiry into the Debtor's relationship with the alleged insider."  *In re Island One, Inc.*, Adversary No. 6:12-ap-00156-KSJ, 2013 WL

652562, at *2 (Bankr. M.D. Fla. Feb. 22, 2013) (citing *Browning Interests v. Allison*,

955 F.2d 1008, 1011 (5th Cir. 1992)); *In re DBSI, Inc.*, 445 B.R. 344, 348 (Bankr. D.

Del. 2011)).  "The determination is fact-intensive and must be made on a case-by-

case basis."  *Id.*  "Whether a party is an insider is a mixed question of fact and law."

*Carn v. Heesung PMTech Corp.*, 579 B.R. 282, 298 (M.D. Ala. 2017) (citing *In re

Krehl*, 86 F.3d 737, 742 (7th Cir. 1996)).

> Considerations important to determining the closeness of
> the relationship between the creditor and debtor include
> whether the parties maintained "frequent" contact;
> testimony that demonstrated a close relationship; whether
> the parties had a personal friendship; whether the creditor
> had the ability to coerce the debtor to enter into
> transactions not in the debtor's interest; whether the
> parties shared the same office space; whether the creditor
> had actual control over the debtor; whether the parties
> were involved in a joint venture to share profits.

*Id.* (quoting *In re Moskowitz*, No. 10-73348-WLH, 2011 WL 6176210, at *4–5

(Bankr. N.D. Ga. Nov. 29, 2011)).

As best the Court can discern, Appellant argues that "OR Title and Debtor

mixed their businesses through ATFS, resulting in Debtor's employees managing

title policies issued by OR Title" and that the work performed by OR Title, Debtor,

and ATFS occurred in the same location – Debtor's headquarters building.

Appellant Brief, at 87–88.  The record establishes that OR Title and Debtor had an

ordinary business relationship resulting from the JVA between OR Title's parent

company, OR Holding, and Debtor.  Appellees argue, and the Court agrees, that

"[a]t all times, OR Title and Debtor had separate ownership and separate boards."

*Id.*  Appellant points to no genuine issue of material fact in dispute here.  Indeed, as

38

one bankruptcy court explained:

> In evaluating whether a transaction was conducted at arm's length, courts look to whether the loans were made on an unsecured basis and without inquiring into the debtor's ability to repay the loans; whether the creditor knew the debtor was insolvent at the time the debtor made the loans or recorded the security agreements; whether the loans were commercially motivated; whether the parties remained disinterested during the transaction; whether the parties were sensitive to "potential conflicts of interest"; whether the creditor was a "de facto director" of the debtor; whether the transferee had the ability to control or influence the debtor; whether the transaction only benefits one party; whether the loan made to the debtor was documented (e.g., promissory note, mortgage, and specified repayment terms); whether there were any strings attached as to how the debtor could use the loan proceeds; whether there is evidence of a desire to treat this creditor differently from all other general unsecured creditors.

*Carn*, 579 B.R. at 299–300 (quoting *Moskowitz*, 2011 WL 6176210, at *5).

The bankruptcy court's analysis here is as follows:

> (a) Debtor was a competent bargaining party in its relationship with the OR Defendants; (b) Debtor's senior management may have been motivated to support the 2009 JVA so that they, and other employees of Debtor, would become employees of either ATF Services or OR Title; and (c) Debtor's directors may have been motivated to approve the 2015 Master Agreement, in part, to avoid the impact upon themselves personally if the Florida OIR took action to place Debtor into receivership.

(App. Vol. 36, A–8363).  The bankruptcy court's evaluation of whether the Master

Agreement was a transaction between insiders was thorough and based on

undisputed facts.  Although the bankruptcy court noted that Debtor's senior

management and directors *may* have had mixed motives to support the 2009 JVA

and the 2015 Master Agreement, that is based on an inference of a fact that does not exist.  *See Kaplan v. Nautilus Ins. Co.*, No. 1:17-cv-24453-KMM, 2019 WL 12265654, at *3 (S.D. Fla. Nov. 4, 2019) (citations omitted) ("For factual issues to be considered genuine, they must have a real basis in the record. . . .  Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment."); *cf. Gadsby v. Am. Golf Corp. of Cal.*, 557 F. App'x 837, 839 (11th Cir. 2014) (citations omitted) ("We draw all factual inferences in a light most favorable to the nonmoving party. . . .  But an inference based on speculation and conjecture is not reasonable.").  Appellant's argument fails because there is simply no genuine issue of material fact as to whether the Master Agreement constituted a transaction between insiders.  Appellant is simply speculating.

>     iii.   <u>Whether the Master Agreement was for reasonably equivalent value.</u>

The bankruptcy court held a trial as to reasonably equivalent value and this Court has reviewed Appellant's arguments in sections I.A through I.D and, as set forth above, has not found any reversible error.

>     iv.   <u>Whether the Master Agreement had a legitimate purpose</u>

"Even where traditional 'badges of fraud' may be present, actual intent may not necessarily be presumed where a debtor had legitimate or independent reasons or purposes for making the transfer."  *Stewart*, 280 B.R. 268, 283 (Bankr. M.D. Fla. 2001) (citing *Kelly v. Armstrong*, 206 F.3d 794 (8th Cir. 2000)); *see also In re Glob. Outreach, S.A.*, No. 09-01415 (DHS), 2014 WL 4948184, at *8 (Bankr. D.N.J. Oct. 2,

2014) ("Clearly intent to defraud cannot be presumed where the record supports the finding that the transaction was entered into for numerous legitimate reasons rather than to defraud creditors." (citing *Stewart*, 280 B.R. at 283)).  Here, the bankruptcy court found that "the 2015 Master Agreement and the 2015 Transfers had the 'legitimate supervening purpose' of enabling Debtor to obtain reinsurance of its policy liabilities."  (App. Vol. 36, A–8366).

Appellant argues that a trial on this issue was necessary because the record contained facts calling into question whether Debtor's intent was legitimate, again questioning whether Debtor's board members acted in Debtor's interest.  Appellant Brief, at 92–93.  Specifically, Appellant cites the following facts in support of its argument:

> Ted Connor stated it was important to keep Debtor out of receivership, and instead enter into the Master Agreement, because receivership would mean the JVA would be over and Appellees could lose the IP.  [A2:286/ECF153:50¶165.] According to Del Potter, one of Debtor's board members, Appellees asked Debtor to "take one for the team" [A2:286-87/ECF153:50–51¶166], *i.e.*, do what was in appellees' interests, not what was in Debtor's or its creditors' interest. Debtor's board also debated what was in ***their*** best interest – not Debtor's or creditors' best interest.  The board debated whether receivership (versus the Master Agreement) would subject them to personal liability and whether it would interfere with their personal business. [A2:283,286–87/ECF153:47, 50–51¶¶157,166–67,170.]

Appellant Brief, at 92–93.

Additionally, Appellant argues that certain aspects of the Master Agreement cast doubt on its legitimacy.  Specifically:

> First, if the purpose was to obtain reinsurance, then the

41

> Master Agreement would just be a reinsurance contract and not the web of multiple agreements transferring various assets and leaving behind specific liabilities. [A10:2198–2211/ECF153–55.]   Second, if Debtor was insolvent – as the bankruptcy court and OIR both found – then stringing Debtor along for Appellees' benefit could not be legitimate.  Rather, the Florida Legislature has laid out a comprehensive statutory scheme detailing how troubled title insurers are to resolve their financial distress: through receivership, rehabilitation, and liquidation.  *See* Fla. Stat. ch. 631.   Avoiding Florida's statutory process to benefit Appellees to creditors' detriment is not legitimate.

Appellant Brief, at 93.

Appellees respond that Appellant "wrongly and without support presumes that if the transfer had some benefit to either OR Title or Debtor's directors, that necessarily renders its purpose illegitimate."  Appellee Brief, at 68.  The Court agrees.  Again, Appellant seeks to survive summary judgment with speculative assertions.  The Court agrees that benefit to OR Title or Debtor's directors does not render the transfer's purpose illegitimate.

**b. Whether the bankruptcy court (i) improperly denied Appellant's motion for summary judgment on Count XI (Successor Liability Against OR Companies and OR Holding - Mere Continuation of the Predecessor) and (ii) improperly granted Appellee's motion for summary judgment on Counts X (Successor Liability Against OR Companies and OR Holding - De Facto Merger) and XI (Appellant Issues 6, 8).**

Appellant moved for summary judgment as to his claim that ATFS has successor liability to Debtor's creditors under the mere continuation theory.  (App. Vol. 12, A–2864–85 [¶¶ 140–48]).  Appellees cross-moved for summary judgment on that count and moved for summary judgment as to Appellant's claims that ATFS has successor liability to Debtor's creditors under the de facto merger theory.  (App.

Vol. 2, A–2682–83 [¶¶ 130–139]).  The bankruptcy court found that Appellant did
not meet his burden of proof entitling him to a directed verdict on the issue of
whether ATFS is Debtor's successor in interest under the mere continuation theory.
(App. Vol. 36, A–8376).  The bankruptcy court also found that Appellees met their
burden of proof on summary judgment on the issues of whether ATFS is Debtor's
successor in interest under both the de facto merger and the mere continuation
theories, and that Appellant did not meet his burden to show the existence of a
genuine issue of material fact on those counts.  *Id.* at A–8377.  Accordingly, the
Court granted summary judgment to the Appellees on Counts X and XI of the
Complaint.  *Id.*

i.  <u>Mere continuation theory</u>

"The concept of continuation of business arises where the successor
corporation is merely a continuation or reincarnation of the predecessor corporation
under a different name."  *Nuvasive, Inc. v. Absolute Med., LLC*, No. 6:17-cv-2206-
Orl-41GJK, 2021 WL 3008153, at *10 (M.D. Fla. May 4, 2021) (quoting *Centimark
Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008)).  "Mere
continuation occurs when one corporation is absorbed by another, i.e., there is a
continuity of the [first] corporation evidenced by such things as the same
management, personnel, assets, location and stockholders."  *Id.* (quoting *Centimark*,
288 F. App'x at 614).  "While having common attributes does not automatically
impose liability on a successor corporation, merely repainting the sign on the door
and using a new letterhead certainly gives the appearance that the new corporation

43

is simply a continuation of the predecessor corporation." *Mitutoyo Am. Corp. v. Suncoast Precision, Inc.*, No. 8:08-mc-36-T-TBM, 2011 WL 2802938, at *5 (M.D. Fla. July 18, 2011) (citing *Lab'y Corp. of Am. v. Pro. Recovery Network*, 813 So. 2d 266, 269 (Fla. 5th DCA 2002)).  The ultimate question is "whether each entity has run its own race, or whether[] there has been a relay-style passing of the baton from one to the other." *Id.* (quoting *Centimark*, 288 F. App'x at 614).  Put differently, when a company is a mere continuation of the seller, "the 'purchasing corporation is merely a "new hat" for the seller, with the same or similar entity or ownership.'" *Murphy v. Blackjet, Inc.*, No. 13-80280-CIV-HURLEY, 2016 WL 3017224, at *4 (S.D. Fla. May 26, 2016) (citing *Bud Antle, Inc. v. E Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985)).

It is undisputed that Debtor and ATFS had the same management and personnel.  (*See* App. Vol. 36, A–8369).  Remaining at issue for the mere continuation analysis is whether Debtor and ATFS had the same assets, location, and stockholders.  *See Nuvasive*, 2021 WL 3008153, at *10.

### 1.  *Assets*

Appellant claims that there is a "material factual dispute over the assets transferred" from Debtor to ATFS.  Appellant Brief, at 102.  According to Appellant, the record establishes that Debtor gave ATFS "a copy of the Title Plant, use of Debtor's IP, furniture and equipment, and all of its workforce" and that, without these assets, ATFS could not have performed its function.  Appellant Brief, at 102.

The bankruptcy court noted that "as Debtor reported to the Florida OIR, as of

44

September 30, 2009 – three months after it entered in the 2009 JVA – Debtor was still in possession of assets having a value of $240 million." (App. Vol. 36, A–8370). Appellant claims that he disputed this fact. Appellant Brief, at 102. But the citation Appellant points to does *not* dispute the fact. Instead, the citation "disputes the characterization as misleading" and notes that "Debtor's Quarterly Statement for the Quarter Ended September 30, 2009 states that Debtor's assets totaled $240,762,580, its non-admitted assets totaled $93,674,607, its net admitted assets totaled $147,087,973, its liabilities totaled [$]152,386,923, and its surplus totaled -$5,298,952." (App. Vol. 22, A–5131 [¶ 82]).

Because it is undisputed that Debtor retained around $240 million that was not transferred to ATFS, the Court agrees with the bankruptcy court's determination that Debtor and ATFS did not have the same assets.

### 2.  *Location*

Appellant points out that ATFS's "corporate headquarters were the same as Debtor's." Appellant Brief, at 101. Appellant claims that this fact is not found anywhere in the analysis, but the bankruptcy court noted that "Debtor leased its Headquarter[s] Property to ATF Services to use as its principal place of business." (App. Vol. 36, A–8370). The record supports a finding that ATFS and Debtor operated from the same location.

### 3.  *Stockholders*

"Florida courts have held that a 'key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing

45

corporation.'" *Mitutoyo*, 2011 WL 2802938, at *5 (quoting *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994)).  Some courts have found that "substantial" ownership, rather than identical ownership, is sufficient.  *Florio v. Manitex Skycrane, LLC*, No. 6:07-cv-1700-Orl-28KRS, 2010 WL 5137626, at *5 (M.D. Fla. Dec. 10, 2010) ("In applying the de facto merger doctrine, Florida courts have uniformly required a finding of substantial continuity of ownership.").  Appellees admit that "some of Debtor's former officers became officers of [ATFS] . . . ."  Appellee Brief, at 81.  Appellees argue, however, that there is no continuity of stockholders and explains that the Trust's shares are Class B Shares, which have no financial interest.  Appellee Brief, at 81–82.  Appellant does not appear to dispute those facts but seems to argue that the Trust's ownership of Class B shares is sufficient to show common ownership and contends that deciding whether the evidence showing common ownership creates a material issue of fact necessitating a trial.  Appellant Reply Brief, at 47.  The Court disagrees with Appellant that this is a genuine material issue of fact.  Indeed, the parties agree that some of Debtor's former officers became officers of ATFS and the Trust, which used to own Debtor, and replaced Debtor as the owner of ATFS's Class B shares.  It is undisputed that the Trust does not own any financial interest in ATFS.  And Appellant has identified no case supporting its assertion that ownership of governance-only shares establishes common ownership.

Accordingly, the Court affirms the bankruptcy court's finding with respect to common ownership.

ii.  De facto merger

"A de facto merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger." *Mitutoyo*, 2011 WL 2802938, at *5 (citing *Amjad Munim*, 648 So. 2d at 153).  To find a de facto merger, "there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities." *Florio*, 2010 WL 5137626, at *4 (citing *Amjad Munim*, 648 So. 2d at 153–54).  "In order to constitute a de facto merger, 'there must be some sort of continuation of the stockholders' ownership interest.'"  *Id.* (citing *Bud Antle, Inc. v. E Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985)).

As set forth above, Debtor and ATFS have some of the same management, the same personnel, and physical location.  But they did *not* share the same assets. That fact is undisputed.  Again, it is also undisputed that a substantial amount of assets—roughly $240 million—was retained by Debtor and the stockholders did not have continuality of financial interest in the two companies.  (App. Vol. 36, A–8370). Further fact-finding is not necessary to delve into the undisputed.

Appellant states that Debtor is "in the process of dissolving through the bankruptcy case," but cites no authority that suggests a company "in the process of dissolving" has dissolved.  Appellant Brief, at 104–05.  Accordingly, the Court finds that it is undisputed that Debtor has not dissolved.

47

Finally, Appellant claims that ATFS assumed real property leases that it used for its business operations. Appellant Brief, at 105. The bankruptcy court found that ATFS's assumption of those leases, "for premises that it used in its own operations" could not establish that ATFS assumed Debtor's liabilities. (App. Vol. 36, A–8376). Similarly, Appellees do not dispute that ATFS assumed such leases but argue that it is undisputed that the assumption of such leases is "immaterial given the size of Debtor's title policy liabilities," which ATFS did not assume. Appellee Brief, at 83. In his reply brief, rather than disputing that the value of the lease liabilities is immaterial given the size of Debtor's title policy liabilities, Appellant instead claims that there is "no reason" to compare the leases assumed by ATFS to the title policy liabilities. Appellant Reply Brief, at 48–49. During the REV Trial, the bankruptcy court found that OR Title's assumption of title policy liabilities was in the range of $45 million to $57.2 million. (App. Vol. 36, A–8308–09). Appellant fails to point to any genuine dispute of material fact that the value of the lease liabilities comes close to making up enough of Debtor's liabilities to even suggest a de facto merger, and thus summary judgment was warranted. *See Coral Windows Bahamas, LTD v. Pande Pane, LLC*, No. 11-22128-Civ, 2013 WL 321584, at *4 (S.D. Fla. Jan. 28, 2013) (summary judgment not warranted where "[t]he parties have not presented sufficient evidence as to whether the[] assumptions represent a significant part of [defendant]'s liabilities so as to create successor liability").

48

      **c. Whether the bankruptcy court improperly granted Appellee's motion for summary judgment on Count IX (Declaratory Judgment Claim Against ATF Services, OR Companies, and OR Holding Declaring that ATF Services is the Alter Ego for OR Companies and OR Holding) (Appellant Issue 9).**

Appellees moved for summary judgment on the issue of whether ATFS is the alter ego of OR Holding and OR Companies.  (App. Vol. 36, A–8377).

To pierce the corporate veil based on the theory of alter ego liability, Florida has established a three-part test, which requires a plaintiff to show persuasive evidence that: "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact nonexistent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Zurich Am. Ins. Co. v. Hardin*, No. 8:14-cv-775-T-23AAS, 2020 WL 3272636, at *2 (M.D. Fla. Mar. 11, 2020) (citing *Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, No. 5:03-cv-354-Oc-10GRJ, 2008 WL 2993958, at *7 (M.D. Fla. Aug 1, 2008), *aff'd*, 605 F.3d 856 (11th Cir. 2010)).

The bankruptcy court found that there was a genuine issue of material fact as to whether OR Holding dominated and controlled ATFS's Board of Governors, but concluded that the OR Defendants had met their burden on summary judgment to prove that Appellant was unable to establish that ATFS was created through an improper use of the corporate form and that Debtor's creditors were injured by ATFS's corporate form.  (App. Vol. 36, A–8390).  Neither of the parties argues that

no genuine issue of material fact exists as to the first element, dominion and control.  Accordingly, the Court will not consider that element.

> i. <u>Corporate form used fraudulently or for improper purpose</u>

"Florida's high regard for corporate ownership requires a showing that the corporation was specifically organized or used to mislead creditors or to perpetrate fraud before a party can pierce a corporation's veil." *In re Paul C. Larsen, P.A.*, 610 B.R. 684, 688 (Bankr. M.D. Fla. 2019) (quoting *In re Pearlman*, 462 B.R. 849, 856 (Bankr. M.D. Fla. 2012)).

Appellant claims that he proved that Appellees had a single joint account and commingled funds in that account.  Appellant Brief, at 108.  A showing that Appellees had a single joint account and commingled funds in that account does not establish that ATFS was specifically organized or used to mislead creditors or to perpetrate fraud.

Appellant also avers that ATFS did not observe all corporate formalities, but even if that were true (which Appellees deny), under Florida law, failing to recognize corporate formalities is not enough to pierce the corporate veil unless a plaintiff can prove a specific improper purpose.  *See Robertson-Ceco Corp. v. Cornelius*, No. 3:03cv475/RV/EMT, 2007 WL 1020326, at *7 (N.D. Fla. Mar. 30, 2007) (citation omitted) ("[Plaintiff] argues that the veil should be pierced because corporate formalities were not recognized and because there was a commingling of funds.  Under Florida law, this is not enough *unless it is proven that such actions were undertaken specifically for an improper purpose*.") (emphasis in original).

Finally, Appellant argues that the record contains evidence that "ATFS was nothing more than a shell for OR Holding and OR Companies (and, to an extent, OR Title)." Appellant Brief, at 109. Specifically, Appellant contends that ATFS had no employees and that the ATFS lease arrangement lacked economic substance. *Id.* Even assuming the truth of Appellant's statements, Appellant has not pointed to any facts showing that ATFS's lack of employees or its lease arrangement were for a specific improper purpose.

Accordingly, the Court finds that the bankruptcy court did not reversibly err by finding that Appellant was unable to establish that ATFS was created or used for a fraudulent or improper purpose.

    ii. <u>Fraudulent or improper use of corporate form caused injury to claimant</u>

Because the Court found that Appellant is unable to establish that ATFS was created or used for a fraudulent or improper purpose, the Court cannot find that a fraudulent or improper use of corporate form caused injury to Appellant.

## IV. RULE 15(b) MOTION

  **a. Whether the bankruptcy court abused its discretion in denying Appellant's Rule 15(b) motion (Appellant Issue 5).**

Bankruptcy Rule 7015 incorporates Federal Rule of Civil Procedure 15, which provides, in relevant part:

> (b) Amendments During and After Trial.
>
> > (1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely

> permit an amendment when doing so will aid in
> presenting the merits and the objecting party fails
> to satisfy the court that the evidence would prejudice
> that party's action or defense on the merits.  The
> court may grant a continuance to enable the
> objecting party to meet the evidence.

Fed. R. Civ. P. 15(b).  The resolution of a motion to amend pleadings under Federal

Rule of Civil Procedure 15(b) is subject to reversal for abuse of discretion.  *In re*

*Haimes*, 146 B.R. 298, 299–300 (S.D. Fla. 1992).  A court must have a "substantial

reason to justify a denial."  *LM Ins. Corp. v. Occidental Fire*, No. 5:19-cv-274-Oc-

30PRL, 2020 WL 2950372, at *1 (M.D. Fla. Feb. 11, 2020) (citing *Laurie v. Ala. Ct.*

*of Crim. Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001)).  Some reasons include

"undue delay, bad faith, dilatory motive on the part of the movant, undue prejudice

to the opposing party, and futility of the amendment."  *Id.* (citing *Forman v. Davis*,

371 U.S. 178, 182 (1962)).

Appellant argues that the bankruptcy court's decision was wrong for two

reasons: (i) the 15(b) Motion was unnecessary; and (ii) the bankruptcy court applied

the wrong standard.  Appellant Brief, at 74–79.

Appellant argues that the 15(b) Motion was unnecessary because failing to

identify a mediate transferee is not necessary to plead a fraudulent transfer claim.

Appellant Brief, at 75 (citing *In re Trauger*, 109 B.R. 502, 504 n.2 (Bankr. S.D. Fla.

1989)).  Whether or not the 15(b) Motion was necessary is unavailing as to whether

the decision made on the 15(b) Motion was an abuse of the bankruptcy court's

discretion.

Appellant also argues that the bankruptcy court's rationale for denying the

15(b) Motion applies the wrong standard because courts should freely permit an amendment when doing so will aid presenting the merits.  Appellant Brief, at 76–77.  But the bankruptcy court found that an amendment would be futile, which courts have found is a substantial reason to justify denial of a 15(b) motion.  *See Laurie*, 256 F.3d at 1274.

The bankruptcy court found that the proposed amendment to the Complaint would be futile because: (i) "the Initial Transfer is outside the look-back period for avoiding fraudulent transfers under § 548 and Fla. Stat. § 726.110"; and (ii) "avoidance of the Initial Transfer is only an intermediate step toward the relief actually sought by Plaintiff, and the Court has ruled that the 2015 Transfers are not avoidable."  (App. Vol. 36, A–8530).

Appellant acknowledged that the 2011 Initial Transfer was outside the two-year and four-year look-back periods for avoiding fraudulent transfers under 11 U.S.C. § 548 and Fla. Stat. § 726.110.  (*Id.*).  But he asserted that he was not barred by the statute of limitations because he could stand in the shoes of the FDIC and use the FDIC's six-year statute of limitations.  (*Id.*).

The bankruptcy court found that under the "Statute of limitations for actions brought by conservator or receiver," 12 U.S.C. § 1821(d)(14), the FDIC may bring action on a contract claim within the longer of (1) six years from the date the claim accrues, or (2) the applicable limitations period under state law.  (App. Vol. 36, A–8531).  But the statute, according to the bankruptcy court, applies only to claims that arose *before* the FDIC was appointed as receiver for a failed institution.  (*Id.*).

53

Here, the bankruptcy court reasoned, the FDIC was appointed as the receiver for Washington Mutual Bank ("WaMu") on September 25, 2008, the FDIC filed its claim in Debtor's case seeking reimbursements for losses incurred by WaMu because of the breach, fraud, or dishonesty of one of Debtor's agents, but the Initial Transfer occurred in June 2011, almost three years after the FDIC's appointment as receiver.  (App. Vol. 36, A–8532).  Accordingly, the bankruptcy court held that "[b]ecause the Initial Transfer occurred *after* the FDIC's appointment as receiver, there is no need to 'extend' the statute of limitations for the FDIC to bring a fraudulent transfer claim," thus plaintiff cannot use the extender statute to avoid the Initial Transfer.  (App. Vol. 36, A–8533).

Appellant argues that this limitation is "nowhere in the extender statute," and the statute of limitation begins to run on the ***later of*** (i) the date of the appointment; or (ii) the date on which the cause of action accrues.  Appellant Brief, at 77–78.

> FIRREA provides a federal statute of limitations system for claims brought by the RTC as receiver.  12 U.S.C. § 1821(d)(14)(A) & (B).  The statute has been interpreted not to revive stale state law claims acquired by the FDIC. . . The district court must first determine whether the claims being brought by the RTC were viable under the applicable state statute of limitations at the time the RTC was appointed receiver.  If the state statute has not yet run, the period provided by 12 U.S.C. § 1821(d)(14)(A) then begins to run.

*Resol. Tr. Corp. v. Artley*, 28 F.3d 1099, 1101 (11th Cir. 1994) (citations omitted).

Here, the claim was not viable at the time that FDIC was appointed receiver because the claim did not exist yet. Accordingly, Appellant's interpretation of the

statute is incorrect, while the bankruptcy court's was correct.

Based on the record, the Court cannot find that the bankruptcy court abused its discretion because the bankruptcy court did not "[apply] the wrong legal standard, [make] clearly erroneous findings of fact, or [base] its decisions on a clear error in judgment." *Porto*, 645 F.3d at 1303.

## CONCLUSION

The bankruptcy court's orders are **AFFIRMED**.  The Court is hopeful that this order will put an end to this extensive, prolonged, and expensive litigation.

ORDERED at Fort Myers, Florida on February 15, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE